GOODSON *v.* BOARD OF HEALTH OF DETROIT.

1. MUNICIPAL CORPORATIONS — EXTRA SERVICES OF EMPLOYÉ — MANDAMUS.

   *Mandamus* is not the proper remedy to secure payment for services rendered after hours by a clerk in a municipal office.

2. SAME—SETTLEMENT OF CLAIM.

   The presentation by a clerk in a city office of a bill for extra services, and its allowance, constitute a settlement of all claims by him for extra services prior to such time, where he accepts the sum allowed, and gives his receipt, without in any way indicating that he has a further claim.

3. SAME—BOARD OF HEALTH — AUTHORITY OF COMMISSIONER.

   The Detroit charter ( section 382 ) gave to the local board of health exclusive power to appoint clerks for the health office, and to prescribe their duties and determine their compensa-

tion. The regular hours of work in such office, as fixed by the health commissioner, were from 8 A. M. to 4 P. M. Relator, who was accustomed to work after 4 o'clock and into the evening, was told by the commissioner that he should be paid for his extra services. At the expiration of his term of employment, he sought to compel the board of health to make such payment. *Held,* that the board was not bound by the action of the commissioner.

*Certiorari* to Wayne; Frazer, J. Submitted July 6, 1897. Decided September 14, 1897.

*Mandamus* by John W. Goodson to compel the board of health of the city of Detroit to pay him for extra services as clerk in the health department. From an order granting the writ, respondent brings *certiorari.* Reversed.

The relator was appointed clerk in the health department of the city of Detroit at a salary of $100 per month, and was so employed from October, 1892, to January, 1895. In 1895 the board of health which employed him went out of office, and a new board was created. Relator then presented to this new board the following bill:

The Board of Health of the City of Detroit, in Account with John W. Goodson, Dr.

To extra services rendered necessary by exigencies arising by reason of the increase of contagious diseases, and the natural increase of labor incident thereto:

| | |
|---|---|
| October 1, 1892, to December 31, 1892, 13 Sundays and 1 legal holiday | 14 days |
| January 1, 1893, to December 31, 1893, 54 Sundays and 7 legal holidays | 61 " |
| January 1, 1894, to December 31, 1894, 53 Sundays and 7 legal holidays | 60 " |
| January 1, 1895, to January 18, 1895, 2 Sundays and 1 holiday | 3 " |
| Whole number of days wrought in extra service | 138 days |
| Total amount due for said extra services at $3.92 per day for 138 days | $540 96 |
| Number of hours wrought in extra overtime and in night work, from May 1, 1894, to January 18, 1895, 1,315 hours, making, at 8 hours for each day, 164 days and 3 hours, at $3.92 per day | 644 25 |
| Total | $1,185 21 |

| By cash on account paid by the old board, July 19, 1894 | $100 | 00 |
|---|---|---|

| Balance due relator January 18, 1895, and when the old board was legislated out | $1,085 | 21 |
|---|---|---|
| Interest on $1,085 from January 18 to October 18, 1895, at 6 per cent. | 51 | 90 |

| Amount of claim October 18, 1895 | $1,137 | 21 |
|---|---|---|
| Amount paid by the respondent, the board of health of the city of Detroit, to relator, October 18, 1895, to apply on account | 200 | 00 |

| Balance of relator's claim October 18, 1895 | $937 | 21 |
|---|---|---|
| Interest on $937.21 from October 18, 1895, to January 7, 1896, at 6 per cent. | 59 | 18 |

| Amount of John W. Goodson's claim at the date of filing of his petition | $996 | 39 |
|---|---|---|

The new board, after due consideration, allowed relator $200, which he took, and for which he gave a receipt in full. Relator claims to have received this $200 on account of the claim, and to have so stated when he received the money and gave the receipt. He then instituted this suit by a petition for the writ of *mandamus* to compel the board to allow and pay his bill for the alleged extra services. The respondent answered, and issues were framed, upon which the jury found (1) that the board of health employed relator to do the extra work set forth in his bill; (2) that he did not perform the work; (3) that the board agreed to pay him for said extra work; (4) that the old board paid him $100 on account of said extra work; (5) that the board did not owe him the sum of $1,085.21; and (6) that he did extra work, for which he had not been paid, to the amount of $100. The court entered an order directing the payment of this amount and the costs of suit. Respondent brings the case to this court by the writ of *certiorari* to review the proceedings.

*Ervin Palmer*, for relator.

*James H. Pound* and *C. D. Joslyn*, for respondent.

Grant, J. (*after stating the facts*). 1. *Mandamus* is not the proper remedy. The proper remedy is by a suit

at law. Inasmuch as this point is not raised, we will dispose of the case upon its merits.

2. The authority for the appointment of relator is found in section 382 of the charter of 1893. This section gives the appointing power to the board of health alone, and the power "to prescribe the powers and duties and determine the annual salary and compensation of each and all herein referred to." There was no contract between relator and respondent to perform these extra services, unless one is to be implied from the fact that he rendered the services and that the board had knowledge thereof. He presented no itemized bill to the old board. During the entire term of his employment he was paid semi-monthly, and gave receipts in full for his services. He testified that he was employed by the health officer and secretary of the board as clerk of the department of contagious diseases at a salary of $100 per month, and that his hours of labor were to be from 8 to 4, with one hour to himself at noon. Not only did relator not present any claim to the board, but he never talked with any members thereof in regard to this extra work, although he knew that the board alone had the authority to employ him. He was at one time paid $100 for extra services. We give his own version of the circumstances under which this was paid:

"*Q.* You didn't present an accurate account at that time?

"*A.* No, sir. He said it was not necessary. He said, 'Just make a claim there.'

"*Q.* Just make a claim generally, and let it go at that?

"*A.* Just make a claim for a certain amount, and, if there was any more coming after that, I could make a claim for that later on.

"*Q.* That is, you were going to make two bites at the cherry of what was due you?

"*A.* If you want to put it that way.

"*Q.* That is, you expected to get part of it that was already due you, and then at some future time make the claim over again for back pay?

"*A.* I expected to get a part that was due, and the balance remaining I expected to get later.

"*Q.* What part did you expect to get?

"*A.* The balance that was due me.

"*Q.* But the first time we are talking about?

"*A.* I expected to get a reasonable amount that was due me for services rendered up to that date.

"*Q.* But you got $100?

"*A.* Yes, sir.

"*Q.* What part of the services was that intended to cover?

"*A.* To cover some of the services that had already been rendered.

"*Q.* What part?

"*A.* They did not designate.

"*Q.* How was the board ever to know when it had got through paying you?

"*A.* I didn't ask the board that question.

"*Q.* Could you tell now, do you think?

"*A.* I don't know that I would be apt to tell.

"*Q.* In presenting your claim, did you tell the board that that was only part of it?

"*A.* I told Dr. McLeod.

"*Q.* But you didn't tell the board?

"*A.* No, sir.

"*Q.* You had no relations whatever with the board?

"*A.* No, sir; he represented the board to me."

From this testimony it appears that relator presented at that time a bill for extra services, which was allowed and paid, and for which he gave a receipt. This was a settlement of all his claims prior to that time. He neither did nor said anything to indicate to the board that this was to be a partial payment upon his account, or that he had any other claim. A large part of his claim—about one-half—was for services rendered prior to the allowance of that $100. Neither did he make any claim to the board for extra services when he was paid semi-monthly. *Bartlett v. Railway Co.*, 82 Mich. 658.

3. The health commissioner was not invested with the authority to fix relator's hours of labor, to determine how many hours should constitute a day's work, and bind the city to pay therefor. If relator was dissatisfied with his employment and hours of labor and compensation, he should have applied to the board to fix them. The charter

gives the exclusive right to the board of health to fix the compensation of its employés. The board has twice acted upon the relator's compensation for this extra work. Its action is conclusive. He entered upon the employment with full knowledge of this power of the board. The court should have denied the writ.

Reversed, and writ of *mandamus* denied.

The other Justices concurred.